Irving T. Bush v. Commissioner.
Bush v. Commissioner
Docket No. 99364.
United States Tax Court
1944 Tax Ct. Memo LEXIS 254; 3 T.C.M. (CCH) 463; T.C.M. (RIA) 44160; May 16, 1944
*254 James A. Cherry, Esq., for the petitioner. John T. Rogers, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion This case has been remanded to us by the Circuit Court of Appeals, Second Circuit, for the purpose of determining whether the income from a certain trust is taxable to the grantor under the doctrine of , "as illuminated by Helvering v. Stuart", . Our original findings of fact and opinion herein are reported at . Findings of Fact We incorporate herein the findings of fact which we made in our original decision () relating to the trust issue. In order to make this discussion more readily understandable, we set them out here in part and in condensed form, together with other facts which do not appear in our original findings. In 1923, petitioner was president and a substantial stockholder of Bush Terminal Co. He had been its president since 1902, and, with the exception of one year, was president until the date of the first hearing *255 herein, receiving a substantial salary as such during 1931 to 1934 inclusive. Under date of January 15, 1923, petitioner executed a trust instrument, for the benefit of his wife, Maud H. Bush, their son, and his two daughters by a former marriage. The corpus of the trust consisted of 10,000 shares of the common stock of Bush Terminal Co., of the par value of $100 per share and an estimated market value of $800,000. The trust was to continue during the life of the grantor, and the net income was to be paid 60 percent to his wife, and 20 percent to each of his two daughters. Upon the death of the grantor, the daughters were each to receive 20 percent of the corpus, and the remaining 60 percent was to go to his son, Rufus. The grantor reserved the power to make further disposition of the interest of any beneficiary who might die during his lifetime. The trust instrument also granted to the settlor the following powers: "FOURTH: In the event of the death, disability or resignation of the trustee, the first party shall have the right to designate some suitable person or corporation to take over and carry on and administer the trust. "FIFTH: The first party reserves to himself the right *256 during his lifetime to revoke the trust hereby created by giving the trustee written notice to that effect, and thereupon the trustee shall deliver and pay over to the first party the principal of the trust fund however constituted. The first party likewise reserves the right at any time or times when it shall seem in his judgment advantageous to and for the best interest of the several beneficiaries to make a change in the securities constituting the corpus of the trust, to authorize and direct the trustee to sell or exchange the shares of stock hereby transferred to the trustee or any part thereof, and to invest and reinvest the proceeds in securities to be approved by the first party in writing, and to sell or exchange any other securities, or any part thereof, which may, from time to time constitute the corpus of the trust or trusts. The first party likewise reserves the right to vote the shares of stock hereby transferred, or any other shares which may, from time to time, constitute the corpus of the trust, or a part thereof, by reason of a sale or exchange of the shares hereby transferred, The trustee shall, as and when requested so to do by the first party, execute a proxy *257 or proxies in accordance with the terms hereof. In following the directions of the first party for the sale or exchange or any investment of the trust funds, as above provided, the trustee shall in no wise be held responsible for any loss or depreciation of principal or income." The stock was delivered and transferred on the books of the corporation to R. G. Simonds, the trustee, who was a business associate of the grantor. Under date of May 3, 1923, petitioner notified the trustee in writing that he was renouncing the right to revoke the trust and declared it to be irrevocable. At the time of the creation of this trust, petitioner and his wife, Maud, were living together amicably as husband and wife, and their son Rufus lived with them. Petitioner's daughters lived with their mother, petitioner's former wife, in California. The income from the trust was distributed by the trustee in accordance with the terms of the trust instrument until sometime in 1930. Tax on the income so distributed was paid during those years by the beneficiaries who received it. Between 1925 and 1927, all of the Bush Terminal Co. stock owned by the trust was sold and the proceeds reinvested in the securities *258 consisting in the greater part of bonds and preferred stocks of a variety of corporations, including railroads and other large public utilities. The securities of the trust were bought and sold at the direction of petitioner. The securities held by the trust after the disposition of the Bush Terminal Co. stock in 1927 represented no economic advantage to petitioner by way of corporate control. The trust estate, as of June 5, 1930, had an estimated value of more than $1,600,000 and cosisted of the following types of property in the indicated amounts: Estimated
annual
Value
income
Common stocks
$ 136,000
$ 8.000
Preferred stocks
246,015
17,228
Mortgage
25,000
2,000
Bonds
1,230,848
63,665
500 Units North Amer-
ican Cement
20,000
Cash, Principal
11,258.31
Under date of June 6, 1930, shortly after the institution of a divorce action between the grantor and his wife, a new trust instrument was executed affecting a part of the corpus of the 1923 trust. Maud H. Bush had requested this segregation of her interests from those of his daughters, and the appointment of a different trustee. This property was transferred to the Bank of Manhattan Trust Co., as trustee, *259 the income therefrom to be paid during her lifetime to Maud H. Bush, and thereafter to Rufus, or, if he should not be living, to his issue, if any, otherwise to other remaindermen, not including petitioner or his estate. Petitioner reserved the power to direct the investments of the trust, which power was later exercised by him, and agreed that if the annual income thereof fell below $60,000, he would "make up the deficiency." Petitioner and his wife were thereafter divorced, and the divorce court took cognizance of the existence of the trust for the benefit of the wife. The events incident to the modification of the 1923 trust and its partial "continuation" under the 1930 trust instrument are set forth in our original findings of fact. This trust of June 6, 1930, was held by the Circuit Court of Appeals ( to be, so far as Maud H. Bush is concerned, merely a continuation of the 1923 trust. The question which we are to consider is whether the income from the 1923 trust is taxable to petitioner under the provisions of section 22 (a) by reason of his retention of powers over the corpus or income essentially equivalent *260 to ownership. Petitioner did not retain such control over the corpus of the 1923 trust as to constitute him the owner thereof for tax purposes. Opinion KERN, Judge: In our original decision in this case, we held the income from the 1930 trust taxable to petitioner under the rule of . The Circuit Court of Appeals reversed that decision on the ground that the 1930 trust was, in effect, but a continuation of the 1923 trust, that the petitioner's guaranty of the income from the 1930 trust was, in effect, the guaranty to the wife of income belonging to her and derived from property of which she was already equitable owner, and therefore, the Leonard case was not applicable. However, if petitioner should be considered for tax purposes the owner of the income from the 1923 trust under the Clifford case, then under the reasoning of the Circuit Court, the Leonard case would be applicable. The Circuit Court indicated in its opinion that the 1923 trust did not come within the Clifford rule in its initial phase, and cited v. ; *261 ; but felt obliged to remand the case to us in order that we might "determine whether the 1923 trust came within the doctrinc of the Clifford case as illuminated by the Stuart case." The remand was for further proceedings in accordance with the opinion of the Circuit Court. We indicated in our earlier decision that we considered this trust distinguishable from that in the Clifford case primarily by reason of its irrevocability and the impossibility of any reverter to petitioner or his estate. It should be pointed out that, in addition to the fact that the term of the trust was the life of the grantor, the grantor was not trustee, and the grantor reserved no power to alter the proportionate shares of the income to be paid the beneficiaries, or to pay the income to the beneficiaries or accumulate it at his discretion. Cf. . The power to supervise investments common to the Clifford, the Stuart and this case, is not alone sufficient to justify taxing the income to the grantor. The major element superimposed on the Clifford *262 picture by the Stuart case is the fact that the stock held by the trusts there was stock in the corporation of which the grantor was president and a substantial stockholder. That situation prevailed in this case originally, but did not exist after 1927, when the last of that stock was sold by the trustee. After this case was remanded to us, we considered the Stuart case on remand, and found from the facts there that no appreciable economic benefit resulted to the grantor from his control over the stock in the trust, and we held the principles of the Clifford case inapplicable. We felt that the control retained by the grantor over the investment policies of the trust was not in itself decisive. . We are not able to determine from the record here, as we were in the Stuart case, whether or not petitioner derived any economic advantage from his right to vote the stock in his corporation while it was held by the trust. But if he did, that advantage disappeared when the trust sold that stock. The securities in which the proceeds were reinvested were of such a character that no suggestion is made that they brought *263 with them any comparable advantage. Assuming, for the sake of discussion that there was such an economic advantage to petitioner from 1923 to 1927, as to require the taxation of the income to him during those years, does that fact justify the taxation of the income to him in later years when no such economic benefit could have existed? We think not. There seems to be a reasonable analogy between this situation and that of a trust, originally revocable by the grantor, but later made irrevocable by effective amendment. If the income were taxable to the donor on the basis of his power to revoke, we would have no difficulty holding it taxable to the trust or the beneficiary after that power was removed So, here, if the income from the 1923 trust was properly taxable to petitioner before 1927, it was because of the economic benefit accruing to him by his retention of the power to vote the stock held by the trust under the particular circumstances. After 1927 and at the time of the guaranty made in connection with the 1930 trust, the situation had altered, and the income was properly that of his wife, and is therefore not taxable to him during the tax years involved here. Decision will *264 be entered under Rule 50.